Good morning. May it please the court. Jeffrey Harris for Appellant of Las Vegas Sands. If I may please reserve two minutes for rebuttal. This appeal can be resolved by one simple proposition of black letter law. A quantum merowit claim can exist only in the absence of an express contract. Here, from 2013 until the Sue N case settled in 2019, quantum merowit was the sole remaining legal theory in the underlying case. The jury explicitly rejected Sue N's breach of express contract claim in 2013 and the Nevada Supreme Court did not disturb that finding. Simply put, any contract claim was gone from the case from 2013 onward, yet National Union argued and the District Court agreed that the coverage exclusion for express contractual liability barred LVS from recovering even a single penny of its losses. That holding was error and it should be reversed. The District Court's fundamental error was its all-or-nothing approach to whether the Sue N case resulted in covered losses. Now, National Union and the District Court thought that a claim with a capital C means the entire lawsuit. That is correct, but in no way answers the question of what we're entitled to recover. The term claim merely establishes in this policy the timing of when a claim, not to be circular, arises to make to make sure it's within the coverage period. So it makes sure that if the policy is in effect for calendar year 2003, that's when the thing for which you see coverage arose. But the exclusion for express contracts is not written in terms of claims. It's written from loss, capital L, in connection with a claim. So the District Court erred. The fundamental mistake was saying everything about Sue N fails because when this complaint was filed in 2004 through 2013, there was an express contract. And now the District Court, we think, not only did the court apply an all-or-nothing rule that's not supported by the law, but it applied an all-or-nothing rule frozen in time because when Sue N settled in 2019 for loss, the loss being the settlement and the fees defending it, at that point we look at the state of the world when the case settled. And in fact, even some of their own cases like Nutmeg, which they cite, and Benchmark, which we cite, the duty to indemnify attaches once the litigation is completed and you're able to see what was happening. And I think it might be helpful to illustrate what should have happened. And I can't do much better than the Crosby case, which we cite extensively in our brief. So Romans 6 of Crosby, which is pages 1131 to 1135, compare what the District Court did in Crosby to what the District Court did here. Here, the District Court simply said, you have a lawsuit. It alleges a contract. Therefore, we're done. Crosby, by contrast, does the exact opposite. And you'll note, the policy in Crosby is written almost identically to this policy. It says, loss in connection with a claim first made. So it's the same policy. And Crosby, the court, it spends pages. It goes count by count by count to say some are covered, some are excluded. But Crosby would have been very easy because there was a breach of contract claim there. So under the approach National Union advances and the District Court wanted here, Crosby could have been two pages long. There's a contract claim, therefore you're done. But that's not what the court did. And we think that is the proper approach. And in fact, our case is even easier than Crosby because when Crosby settled, there's no question that there were both covered and non-covered claims. And yet, the presence of the non-covered claims, even though there was still a contract claim, the court still denied summary judgment for the insurer and said, no, you can't get the whole thing kicked out just because there's one uncovered claim. And then the last thing I'll say before moving on to the more specific quantum merit points, this all-or-nothing rule proves too much. Anyone who's done civil litigation, plaintiffs all the time will do kitchen sink pleading where you see there's a business dispute or something happens and they'll plead contract, IAED, business torts, antitrust, defamation, you know, good faith and fair deal. And so because, of course, you're going to want to plead everything you can. And I just think it can't be right that... I think it would be helpful if you if you moved on because at this point in time, we know that in a suing action, the quantum merit claim was was resolved in a manner adverse to your to your client. So I guess that leaves me wondering what what exactly are the damages here? What should still have been covered under this policy? That's exactly where I was about to turn. So loss, capital L, is defined to include settlements and defense costs. So from 2013, which was the jury verdict in the second case, until when Suen settled in 2019, quantum merit was the one and only one one and only claim in the case. So to keep it as completely simple as possible, the settlement. The amount is in the sealed appendix, but it's been said publicly it exceeded the policy limits. So if we just went on the settlement, we get full relief under the policy. So can I ask why would you went on? So I've been looking at this case as a distinction between a duty to defend versus a duty to indemnify. On the indemnify side, as Judge Thomas pointed out, your client had an adverse decision at the Nevada Supreme Court that would seem to be encompassed with an exclusion for a for quantum merit. And if the settlement was as a result from that, why would the settlement be subject to coverage as a loss? Well, I want to be clear, you're referring to 4A, the illegal profit? Yes. Yeah, so that, to be clear, that's one of their alternative arguments. We completely dispute that that applies. So they they argued that below as a backup, but the district court didn't address it. It was briefed relatively briefly. So let's say, let's assume for the moment that we agree with you that the all or nothing approach was not the correct way to approach it. And we look at it on a cause by cause basis. And if we're looking only at quantum merit on the duty to indemnify, why doesn't that settlement fall within the exclusion 4A? Oh, so yes, we think when when courts have applied that, again, it doesn't have to be illegal in the sense of criminal law, but what they're getting at, we cite some of these cases in our reply brief, it's things like misappropriation, insider trading, you usurp something. And here, there was no allegation. But let me just, I mean, you know, I'm looking at the language of 4A itself, arising out of, based upon, or attributable to, the gaining of any profit or advantage to which a final adjudication adverse to the insurance establishes that the insureds were not legally entitled. And the quantum merit claim itself involves some unfair advantage and equitably that that the insured was not entitled to. So why, if I'm looking at, I mean, the language is broader than what the cases you were just citing to would suggest. So why would the settlement be encompassed within that language? Yeah, I think, again, we, there was no allegation that we got the license illegally. There was no allegation we did anything illegally. It's not saying illegally, it's just gaining or any profit or advantage. There's enough, you know, well, I mean, I guess it does say not legally entitled. In our view, in our view is, here's what happened. After we had this tremendous success in getting this license to build a new casino, this guy who they'd had some conversations with and maybe set up some meetings, appeared and asked for money. And again, it was 15 years of litigation in the Nevada state courts. But this, or again, we, in our reply brief footnote 9, we cite some of these cases where, you know, California says it has to be, quote, evidentiary proof that the insured reaped an illegal profit. So I don't, I don't think it can just be because you owe civil damages to someone that that falls into an illegal profit because that would swallow the rule. And it was just an alternative ground. But our view is the level of wrongdoing or not legally entitled, it has to be more than just you owe civil damages. So if I'm interpreting what you're saying correctly, if we were to hypothetically agree with you that we have to parse the complaint, not determine if, if there's one uncovered claim, the whole thing is uncovered, if we got past that, then you would urge us not to decide the applicability or lack thereof of 4A, but leave that to the district court, were we to remand? That would be the standard practice. Again, it was not passed upon below. And again, it was only briefed briefly here because it's an alternative argument they raised, but I, we completely oppose the notion that just because we would owe civil damages, it would somehow be something to which we weren't. Because I think that would swallow the whole rule. I'd like to shift gears a little here, moving to, and I'm gonna ask your friend something like these questions, would you agree with me that you never tendered the defense to the insurer? Yes. Okay, so would, would it be your view that your October 29 letter basically said in some form or another, pay our defense costs, but we're, we're gonna, we're gonna man the ship? Yes, and the, and the policy explicitly requires advancing defense costs, and so there was a dispute below over the standard for advancing versus a duty to defend. We argued it's basically the same standard, and so, and again, if you look at the fraud claim, which we ultimately prevailed on, a fraud claim is not a contract claim. And so again, even if you're going back to those very early legal fees, here's what we think should have happened, Your Honor. When you have a complaint with multiple causes of action, some of which are excluded, we've never disputed that the contract claim was excluded. What should have happened is the parties had a dialogue about the costs, and we probably would have gotten everything we wanted, they would have advanced some costs, and what they would have done is they would have reserved rights, which means if we ultimately lost on express contract, or it was shown there was an express contract, we would have had to pay that back. But what shouldn't have happened is that the very day a complaint came in with three causes of action, two of which are not express contract, it should not have been, no thank you, we're done, everything's excluded. And one point I'll note... Can I ask just to understand the policy itself, and I'm looking at ER 235 section 8, the defense cost settlements. Is it your view that the insurance company had a duty to defend even if a defense is not tendered to the insurer? We've never argued this is a duty to defend policy, but it absolutely says explicitly that they had a duty to advance defense costs, and we could have tendered it, but didn't. Tell me where, because I'm looking at section 8, and it says the insurer does not assume any duty to defend, the insurance shall defend and contest any claim made against them. And so the triggering of it, as I was reading the policy, the triggering event to assuming defense costs is when the insured tenders a defense. So why is that wrong? Remember also, Your Honor, we're backward looking at this point, and in depth, we're looking at indemnification, and so we're actually in defense costs are defined as a part of loss. So when loss, capital L, is defined in the policy, that includes judgments, settlements, as well as defense costs. So we're basically saying, in addition to the settlement, we should get the defense costs. And again, the allocation, we lost on summary judgment on coverage, and so if there is coverage, there probably would have to be, on defense costs, some sort of allocation of... I assume you're also looking at 225, when it says regardless of whether the defense is so tendered, the insurer shall advance defense costs. Yes. And also at 220, where it says the insurer must advance defense cost payments pursuant to the terms here. Yes, yeah, no, so we've never argued it's duty to defend, but we have argued that what should have been happening all along is what I just said of, again, if it ends up being excluded, we may well have had to pay that back, but it shouldn't have been a world where we got nothing. And then the last point, before I save for a bottle, unless there are further questions, they could have written this policy differently, and I think this very much implicates the rule which nobody disputes, which is that coverage is construed broadly, exemptions are construed narrowly. One of their cases, Associated Industries v. Mount Hawley, the exclusion says, quote, express or implied contract. And again, we still had a fraud claim, maybe I would still have that, but there are policies, again, in the cases they cite that says express or implied contract. Ours simply says express contract, and whatever quantum narrow it is, it is the opposite of an express contract. And so unless there are further questions, I would save my time for a bottle. Thank you. Good morning. May it please the Court, Michael Hartley on behalf of National Union. I'm happy to start with any questions that the panel has, but my argument is designed to address basically the points that my opposing counsel has made. Well, I will start with a question. The way I read the policy, the insurer, except in very limited circumstances, has an obligation to advance defense costs, although it can get them back. Here, I think it's undisputed, the insurer didn't advance defense costs following the October 29, 2004 letter. Why isn't that a problem for your client? Because the exclusion precludes coverage for loss, including defense costs. Yeah, but the policy says you have to advance your defense costs regardless. It doesn't, actually, Your Honor. In the insuring agreements, in the defense costs, there are separate sections of this insuring agreement. Tell me what you're looking at there. I'm looking at, specifically, Page, it's 3ER, I think it's, wait a sec, 3ER 225. Right, well, so I have that in front of me, and what I see there is, regardless of whether the defense is so tendered, the insurer shall advance defense costs prior to its final disposition. I'm looking at 225 under defense provisions. I think there's two sentences there, Your Honor. It says it shall advance defense costs for a covered claim. I'm sorry, you're on 225? Yeah, in the defense cost provision. Of such claim. Yeah, so the first sentence says you only have to advance defense costs for a different thing. So I'm looking at 225 where, down at the bottom, it says defense provisions. Yes. Insurer does not assume any duty to defend, and that's the first sentence. Regardless of whether the defense is so tendered, the insurer shall advance defense costs of such claim. The word covered is in there. Okay, maybe it's not on my page 225. It's in the policy itself. Well, where? I mean, it would be helpful to know where, because it's not in this defense provision. In the first page of the insuring agreements. What page is that? That is, I have the insuring agreements as being listed on page ER 225, 3ER 225. I believe Judge Thomas and I are both looking at page 225, and then also when I look at the first page of what I think is the start of the section on 220, it says the insurer does not assume any duty to defend. The insureds may, under certain circumstances, tender. In all events, the insurer must advance defense costs payments pursuant to the terms herein prior to the final disposition of I will look at the language, but the the language itself, the exclusion itself, says that you do not have to pay loss in connection with a claim that is subject to an exclusion. Yeah, but there's a difference between whether you're ultimately on, and I think your friend said this, that they might have to pay it back, but there's a difference between being ultimately on the hook for it if it turns out that none of the claims were covered, as opposed to advancing it sort of pendente lite, which is the way I read this policy. The exclusions, though, the exclusion, especially exclusion H, has language that applies to claims alleging. So that would impose, that would trigger the exclusion from the very filing. So H applies to claims arising out of express contracts, but here we know that the quantum merit claim, I mean, that definitionally can't arise out of an express contract. So why does that, I mean, why isn't it an error that the district court relied only upon 4H? Because 4H applies to a claim that is alleging contractual liability under not just an express contract, but an express agreement. So that language would encompass not just a claim for breach of an undisputed contract, but a claim for contractual liability that fails and is enforced under a different mechanism. And here you have an agreement, the success fee agreement, that was judicially omitted by Las Stands in front of, in the underlying case, and that ended up establishing the fact that, number one, they asked for their fraud claim below, they asked for the fraud claim to be dismissed because Mr. Adelson was confirming to the court that, number one, he promised to pay the success fee, and that, number two, he acknowledged that if the suin earned the success fee, in other words, if they obtained the license, that he would then be obligated to pay. And based on those representations, the court dismissed the fraud claim, concluding that this was a case that arose out of contract rather than tort. But I'm looking at the Suum complaint, and they set out a quantum merit claim that is not relying on a contract or agreement. It's alleging that they were, that plaintiffs performed services, and that despite the demand, that they haven't been compensated. And so it was not, that claim itself was not based on an agreement. It was an alternative theory for recovery that, as your colleague on the other side points out, under Nevada law, you can't have a contract and recover under contra merit. So why would the exclusion 4H apply under those allegations? Because doing so is consistent with the exclusion and the arising out of language, because it's consistent with the allegations themselves, which I'll explain. And they're also consistent both with California law on contract exclusions and on, as to the application of those exclusions to quantum merit generally. But, but you, is, and I apologize for not knowing this, and I'm sure it's in the briefs, is Nevada law basically that ambiguities in an insurance contract are construed against the insurer? As a general proposition. So you could have written this exclusion, and I've seen policies with a broader exclusion that could have said any claim based on express contract or agreement or any cause of action related to such a claim, including quantum merit or something. You could have excluded explicitly quantum merit, but you didn't, right? Because there are two different approaches to exclusions. There are some that address exclusionary language by list. There are some address exclusionary language categorically. And here, here, an alleged contractual liability under an agreement that is not a contract would encompass non-contractual theories like quantum merit. Or the way, the way you wrote this, the way your client wrote it, is attributable to any actual or alleged contractual liability under any express contract or agreement. So, I mean, that's a qualifier. But you could have certainly excluded quantum merit had you wanted to. We could have listed that language, but the, but the last section, the last words of that exclusion are express agreement. There's, there's no dispute. It's established as a matter of judicial fact on the record below that there was an agreement. That the success of the agreement was an agreement. That was admitted by them and it was a judicial admission because there's a lot relied on by the trial court and enforced by the Nevada Court of Appeals. So there is an express agreement. Right, there, I mean, there may be an express agreement, but as my, my colleague has pointed out, under Nevada law, quantum merit fails. Quantum merit can't be based on an express agreement, right? No, because we're talking about both alleged and arising out of, under the terms of the exclusion. And so, here, what the district court did was it said, look, you look at the, the language of the policy and then you look at the allegations in the complaint. The allegations in the complaint, the operative factual allegations, are that there was a contract. Offer, acceptance, demand for payment under the agreement, refusal to pay. The court then pointed to the fact that Las Vegas Sands, in the summary judgment process, admitted, because the complaint says it, that Suen brought the claim, brought the complaint, because they refused to pay under the settlement agreement. The contractual allegations that are the operative facts are incorporated by reference and re-alleged in each single one of the causes of action, including quantum merit. Quantum merit literally talks about the breach of an agreement. There, um... Can you tell me where it talks about a breach of an agreement in the quantum merit? In the fourth page, or that one of the last paragraphs of the complaint, uh, in, on paragraph 42. So, ER, so it's 3 ER 378 and it's paragraph 48, or 42, I'm sorry. And what is it in, in paragraph 42? It says that, alleges that as a result of defendant's breach, that, that LVS was required to retain, or that, sorry, that Suen was required to retain counsel. But up above, it's talking about, in the settlement, that they, that claims perform services, and despite the demands, they weren't paid. So you're, you read paragraph 42 to be a quantum merit claim that's based on an explicit contract. That's what's, that's what it is alleging. It's alleging at the request, in, in earlier paragraphs, paragraph 39, it's alleging at the request and in accordance with the inducement of The only fact that's alleged as a request and inducement is a success fee agreement. The next paragraph alleges that they, that Suen demanded the reasonable value of his services. The only facts in the complaint alleged about the reasonable value of his services is the success fee agreement with the $5 million and the 2% of net profits. So let me, can I ask this? Let's say we don't agree with the district court's approach that if, because if there was an allegation of a breach of contract, that should encompass everything, and therefore, you don't look on a, on a cause by cause basis. Your argument here seems to be that there is an allegation of an, a breach of an agreement or contract, even in the quantum merit claim, which would be subject to the 4H exclusion. What should we do if we were, if we were to decide that the district court did not get the analysis right in this all or nothing approach? What do you think we should do? I, I think there's, there's two responses to that, Your Honor. I think one is that I think it's, the district court was not taking an all or nothing approach. If you look at what the district court was pointing to, the district court was pointing to the allegation, the site that's in, that's in the order is, is referencing the summary of the complaint that includes all of the causes, includes the operative facts, which we've just talked about, as well as the allegations that each of those facts was incorporated into each of the causes of action. And so... Counsel, not to interrupt your answer to Judge Sanchez's question, but I believe not to put words in Judge Sanchez's mouth, he was asking you, let's say we disagree with you. Let's say we do find that the district court hypothetically improperly found this to be an all-or-nothing type of analysis and approach. If we were to, we understand why you think we shouldn't find that, but if we were to do that, what should our approach be, if I've characterized that correctly? Yes. I think to, to look at the operative complaints, the operative factual allegations in the complaint, and the operative facts and incorporated allegations in each of the causes of action, and determine whether, whether the complaint in its entirety and each of its individual causes of action individually, alleges or arises out of alleged contractual liability and are the success for you. But you wouldn't have us have the district court do that in the first instance. You just would have us do that here. I think your, the court has discretion in terms of how it handles that issue, and whether it, whether it returns it to the district court or not. In terms of the remainder of the issues, I think that we are relying on not just Exclusion H, but on Exclusion A and other provisions of the policy, and they were fully briefed by the district court below, and they are issues that, that are presented to the court. If, and if the court decides that it's going to be sending the case back, those are going to be issues that the district court is going to have to decide. They are also issues that are briefed, and so if the court is inclined to address those issues, it can address them in, in connection with this case now on appeal. All right. Thank you, counsel. Just three very quick points in rebuttal. So to Judge Bennett's question about advancing costs, Crosby, which is a great case, and I think shows what should have happened here, page 1129 specifically addresses this and says, there was a reservation of rights, the insurer advanced costs, and California law authorizes insurers who advance costs to later recoup them. So if, if they had advanced costs and we ultimately lost on express contract, we would have to pay them back, but it shouldn't have been that we got nothing. Second, to my friend's points about arising from the express contract, the Nevada Supreme Court 2016 opinion is incredibly helpful on this. So it's, we give the Westlaw site, it's also at supplemental, SER 260. The jury in the second trial returned a damages number that closely followed the contract. Stop, one second. Why don't you put two more minutes on the clock for counsel for the rebuttal, please. I'll be brief, but the jury in the second trial ruled on Quantum Merowet, then returned a damage award that very closely tracked the, the, the alleged agreement, the Nevada Supreme Court reversed and said that was error because it, the jury was clearly relying too heavily on the agreement. And so, again, this is SER 260. The Nevada Supreme Court says it was error to rely too much on the agreement, and the court used the word tenuous to say there was only a tenuous link between an express agreement and the Quantum Merowet claim because the jury rejected the express contract. So on this notion that it might have arisen from the contract, even though there was no contract, the 2016 Nevada Supreme Court makes short work of that. And then the last point I would make is the, the 2010 Nevada Supreme Court opinion emphasizes the faxes that Suen claimed were the express agreement. And those were sent after he performed the services. So this wasn't as if they had some agreement and then he did what he had to do and then it fell apart. He claimed he was arranging these meetings in Beijing, which were like June, July 2001, but the faxes were later in July and then September of 2001. So I don't know how we could say that what he allegedly, the benefit he allegedly conferred, which was before the faxes he sent, somehow, or the faxes they exchanged, somehow arose out of the faxes. And then the truly last thing I'll say in the last 30 seconds, these, the faxes are in the record. And if you look at these, the notion that these were an express contract is absurd. I mean, this was a massive project by a multinational company. He was claiming tens of millions of dollars. These are one page faxes that merely talk about what we might be able to offer at a high level. And so on their face, these do not look like a contract for tens of millions of dollars. The jury agreed and there was no express contract. Could I ask one last question? Under Nevada law, there's no duty to defend when there's no potential for coverage. But we've been talking more about a separate duty to advance defense costs. Does that decision apply to advancing defense costs or no? We absolutely argued below. I don't think my friends agree with that, but we argued below that the standard for advancing should be very similar to the standard for defending. And yes, and we agree. Because there was fraud and quantum merit, there was certainly a potential for coverage. So that was very much our position below that it would be the same standard. All right. Thank you. We thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. Your Honor, I located the site in our brief to the covered language. I just want the court not to have anything to do with it. That's fine. Go ahead. It's on page 21 of our brief and it's 3 ER 225 and 235. But it's page 21 of our brief and it has a covered language, covered claim language in it. All right. Thank you. Thank you.
judges: BENNETT, SANCHEZ, THOMAS